USDC SDNY
DOCUMENT ELECTRONICALLY
FILED
DOC#: _____
DATE FILED: 5-15-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EB SAFE, LLC,

                Petitioner,

-against-

MARK P. HURLEY,

                Respondent.

1:17-CV-06163 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Petitioner EB Safe, LLC has brought this action to vacate an arbitration award issued by the International Institute for Conflict Prevention & Resolution on August 7, 2017 (the "Award") in favor of Respondent Mark P. Hurley. ECF No. 14. Respondent has filed a cross-motion to confirm the Award and for attorneys' fees in connection with this action. ECF No. 7. Petitioner's motion to vacate is hereby **DENIED**; Respondent's cross-motion to confirm and for attorneys' fees is **GRANTED** in part, and **DENIED** in part.

## BACKGROUND

Petitioner EB Safe is a subsidiary of Emigrant Savings Bank. Decl. of Joel A. Chernov Ex. 1, at 1, ECF No. 18. Together with Petitioner Mark Hurley, parties are members of Fiduciary Network, LLC ("FN"). *Id.* FN is a specialty lending business founded by Mr. Hurley in 2006. Resp't's Opp'n and Mem. Supp. Cross Mot. 1, ECF No. 9. Hurley serves as FN's Chief Executive Officer. Decl. of Joel A. Chernov Ex. 1 at 1, ECF No. 18. Per the terms of FN's LLC Agreement, Petitioner could exercise a "Call Right on or after December 1, 2017" to acquire Hurley's (and other FN management team members') equity interests. *Id.* Petitioner could, however, exercise its Call Right prior to December 1, 2017 "if Hurley trigger[ed] a sale of

FN pursuant to his Forced Sale Right." *Id.* "The LLC Agreement provides that Hurley may exercise this Forced Sale Right on December 1, 2015 and on each annual anniversary thereafter." *Id.* The LLC Agreement further states that if Petitioner elects not to exercise its Call Right after Respondent exercises his Forced Sale Right, Petitioner "retains a Right of First Refusal ("ROFR"), the exercise of which would require [Petitioner] to pay a substantial break-up fee to the highest bidder in the sale process." *Id.*

From March through December 2016, parties were "engaged in a series of discussions and acts involving invocation of the Forced Sale and Call Right . . . ." *Id.* Parties' dispute centered on whether Petitioner waived its "Call Right" prior to Respondent exercising his Forced Sale Right on December 1, 2016. Petitioner alleged that Respondent engaged in a series of discussions with sovereign wealth funds in connection with a possible sale of FN, but failed to inform Petitioner of material facts regarding these discussions when ascertaining if Petitioner would exercise its Call Right. Pet'r's Mem. Supp. Pet. Vacate. 1, ECF No. 16. Respondent countered that he had regular discussions with Barry Friedberg, Petitioner's representative on the FN Board, regarding whether Petitioner would exercise its Call Right, and received both oral and e-mail confirmation that Petitioner would not exercise its Call Right should Respondent trigger a Forced Sale. Resp't's Opp'n and Mem. Supp. Cross Mot. 6-7, ECF No. 9. After Respondent exercised his Forced Sale Right, and nearly a month after Respondent sent its e-mail stating it would not assert its Call Right, Petitioner attempted to exercise its Call Right. *Id.* at 8. Respondent informed Petitioner that Petitioner had waived its Call Right and its notice was thus invalid and without legal basis. *Id.* Thereafter, parties engaged in arbitration pursuant to the dispute resolution provision of the LLC Agreement. Decl. of Joel A. Chernov Ex. 1, at 2.

After nearly eight months of review, a panel of three experienced arbitrators[1] ruled in favor of Respondent. Decl. of Joel A. Chernov Ex. 1, ECF No. 18. The arbitral panel found that Petitioner's did in fact waive its Call Right and awarded Respondent $2,222,397 for the costs associated with the arbitration, which Petitioner was required to pay per the Award and the LLC Agreement. *Id.* at 7; 36. Petitioner now argues, as it did to the arbitral panel, that "waiver is not effective 'simply [as a result of] a failure to be fully informed . . . .'" *Id.* at 30 (citation omitted). The arbitral panel disagreed, noting that under Delaware Law there is knowing waiver if a party knew or by the exercise of reasonable diligence could have known the information they purportedly did not know at the time of waiver. *Id.* The panel then enumerated several facts demonstrating Petitioner's failure to exercise diligence, which further supported the panel's finding that there was knowing waiver of Petitioner's Call Right. *Id.* at 30-31.

Petitioner has brought this action asserting that the arbitral panel manifestly disregarded Delaware law regarding waiver in rendering judgment in favor of the Respondent. Petitioner moves to vacate the award on that basis. Respondent opposes Petitioner's motion to vacate and has filed a cross-motion requesting confirmation of the Award and attorneys' fees for labor in connection with the motions before this Court.

**LEGAL STANDARD**

"It is well established that courts must grant an arbitration panel's decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). The Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., only allows for vacatur in four circumstances: (1) the arbitral award "was procured by corruption, fraud, or undue means;" (2) "there was evident partiality or corruption in the arbitrators;" (3) "the arbitrators were guilty of

---

[1] *See* Decl. of Gregg L. Weiner Ex. L, ECF No. 10.

misconduct . . . by which the rights of any party have been prejudiced;" (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

In addition to the four statutory bases for vacatur, the Second Circuit has held that vacatur may also be granted if "an arbitral award that exhibits a 'manifest disregard of law.'" *Duferco*, 333 F.3d at 388 (citing *Goldman v. Architectural Iron. Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002)); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002) (same). Review under the manifest disregard standard is "'highly deferential' to the arbitrators, and relief on such a claim is therefore 'rare.'" *STMicroelectronics, N.V. v. Credit Suisse Sec.* (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (citing *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). A court can vacate an arbitral award for manifest disregard of the law only if (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and, (2) "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (internal quotations omitted); *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004).

Manifest disregard of the evidence, however, is not a proper basis for vacatur. *Wallace*, 378 F.3d at 193. The doctrine of manifest disregard "holds that an arbitral panel's legal conclusions will be confirmed in all but those instances where there is no colorable justification for a conclusion." *Id*. A federal court may only "look upon the evidentiary record of an arbitration proceeding" to "discern[] whether a colorable basis exists for the panel's award so as to assure that the award" was "not the result of the panel's manifest disregard of the law." *Id*. Federal courts, however, <u>cannot</u> "conduct a reassessment of the evidentiary record." *Id*.

4

"Instead, whatever the weight of the evidence considered as a whole, '[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.'" *Id.* (citing *Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512, 516 (2d Cir.1991).

## ANALYSIS

### I. Motion to Vacate; Cross Motion to Confirm

The arbitral panel's decision regarding waiver does not suggest a manifest disregard of clearly applicable Delaware law, as argued by the Petitioner—indeed, the opposite is true. Petitioner alleges that there was clear Delaware law regarding waiver that the arbitral panel knew of yet decided to ignore. Petitioner's argument is without merit.

At the outset, the arbitral panel cited the correct Delaware laws regarding waiver. Decl. of Joel A. Chernov Ex. 1, at 30. In reaching its decision regarding waiver, the arbitral panel relied on the Delaware Supreme Court's holding in *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.,* which holds:

> It is well settled in Delaware that contractual requirements or conditions may be waived. However, the standards for proving waiver under Delaware law are quite exacting. Waiver is the voluntary and intentional relinquishment of a known right. It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights. The facts relied upon to prove waiver must be unequivocal.

871 A.2d 428, 444 (Del. 2005). Petitioner does not contest, nor can it, that the panel applied the correct standard for evaluating whether waiver occurred. Instead, Petitioner asserts that the panel ignored allegedly clear Delaware law that waiver can only be found if it is unequivocal that the waiving party was "fully informed" prior to the waiver. The arbitral panel considered this argument and ascertained that Petitioner's position misstated Delaware law. Decl. of Joel A. Chernov Ex. 1, at 30, ECF No. 18. Citing Delaware law, the panel reasoned that the question is

5

not whether the party was fully informed at the time of waiver, but rather "what the party knew or by the exercise of reasonable diligence could have known at the time of the purported waiver." *Seaford Mach. Works v. Johnson*, No. 95A-08-004, 1996 WL 190776, at *3 (Del. Super. Ct. Apr. 1, 1996); *see also Rose v. Cadillac Fairview Shopping Ctr. Properties (Delaware) Inc.*, 668 A.2d 782, 786 n.1 (Del. Super. Ct. 1995), aff'd sub nom. *Rose v. Sears, Roebuck & Co.*, 676 A.2d 906 (Del. 1996) (same). The arbitral panel then enumerated several facts demonstrating Petitioner's failure to exercise reasonable diligence, which warranted a finding of waiver. Decl. of Joel A. Chernov Ex. 1, at 30-31, ECF No. 18.

The only support the Court can find in Petitioner's moving papers for its claim that Delaware law requires a court to find that a party was fully informed prior to finding waiver is *Turner v. Bernstein*, 776 A.2d 530, 543 (Del. Ch. 2000). *Turner*, however, is inapposite. In *Turner*, the Delaware court was evaluating the adequacy of disclosures made to shareholders by a board directors in connection with a proposed merger. *Id.* at 532. The directors in that case asserted a waiver defense, claiming that stockholders who accept merger consideration and the benefits of a merger waive their right to challenge the transaction. *Id.* at 537. The court was unpersuaded by the waiver defense because in dealings involving directors and shareholders, directors owe fiduciary duties of care and loyalty to shareholders, which create heightened disclosure requirements to ensure shareholders make fully informed decisions. *Id.* at 541-543. These facts are not present in the instant case, and thus there is no clear law that the arbitral panel knew about and ignored in reaching its decision, undercutting Petitioner's motion to vacate.[2]

---

[2] Petitioner also relies on *Chem. Bank v. Layne*, 423 F. Supp. 869, 881 (S.D.N.Y. 1976) to argue that Respondent cannot both provide less than complete disclosures to Petitioner and then also argue that Petitioner failed to make reasonable inquiries regarding material facts. Hence, the arbitral panel's decision as to whether Petitioner knowingly waived was erroneous. *Chem. Bank*, however, is a surety case involving the application of New York law, which limits its applicability to this case. Whether Delaware courts would adopt the logic of *Chem. Bank* is not

Moreover, Petitioner's failure to cite any actual law that the panel disregarded betrays its true intention to have this Court engage in an impermissible reassessment of the evidentiary record. Courts can only review the evidentiary record of an arbitration to "discern[] whether a colorable basis exists for the panel's award" and not whether the arbitral panel's decision reflects a manifest disregard of the evidence. *Wallace*, 378 F.3d at 193. Here, the Petitioner has provided scant evidence of the arbitral panel's failure to apply relevant law, and instead has set forth considerable factual analysis to persuade the Court that the arbitral panel's decision was erroneous. In light of governing law, Petitioner has not only failed to reach the threshold to prove manifest disregard of law, but provides no basis for the Court to reconsider the evidentiary record. Accordingly, as the degree of deference afforded to the arbitral panel is high, and the standard for confirm an arbitration award is low, i.e., whether there is a "barely colorable justification" for the award, *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. Stain Less, Inc.*, No. 07 CV 3202 (FB), 2008 WL 782758, at *1 (E.D.N.Y. Mar. 20, 2008), the Court denies Petitioner's motion to vacate and grants Respondent's cross-motion to confirm.

**II. Attorneys' Fees**

Respondent's request for attorneys' fees in connection with the petitions prosecuted before this Court is not supported based on the plain language of the LLC Agreement. Section 10.4 of the LLC Agreement states in relevant part: "Unless otherwise determined by the arbitrators (which determination shall be final and binding on the parties), the losing party in an arbitration shall pay all the expenses of the parties involved in the arbitration, including the expenses of the arbitrators." Decl. of Joel A. Chernov Ex. 2, at 51. According to the Respondent, the phrases "all expenses" and "the parties involved in the arbitration" can be read

---

for the Court to decide here, and applying *Chem. Bank* to the facts of the instant case would necessitate an

7

to include any expenses incurred by the party who prevailed in the arbitration, including those from filling petitions for confirmation or vacatur of the arbitral award. The Court finds this reading to be overbroad.

First, a plain reading of this provision strongly suggests that costs were intended to be limited to those incurred during the arbitration. The specification of the "losing party <u>in an arbitration</u>" and "the parties involved <u>in the arbitration</u>" cuts in favor of a circumscribed reading of the provision, which distinguishes Section 10.4 from the broader provisions analyzed in the cases upon which the Respondent primarily relies. *See, e.g., Page Int'l Ltd. v. Adam Mar. Corp.*, 53 F. Supp. 2d 591, 599 (S.D.N.Y. 1999) (awarding "all costs of suit and attorney fees incurred <u>in any action</u> thereunder") (emphasis added); *Universal Computer Servs., Inc. v. Dealer Servs., Inc.*, No. 02CV6563(NGG)(CLP), 2003 WL 21685567, at *1 (E.D.N.Y. July 18, 2003) (awarding "any and all expenses ... including reasonable attorneys' fees [incurred] <u>in collection of amounts due under this Agreement</u>.") (emphasis added).

Furthermore, Respondent's reading of Section 10.4 would lead to absurd results. Section 10.4 empowers the arbitrators to decide whether to override the default agreement that the losing party should pay all the expenses of the parties involved in the arbitration. If Respondent's reading is correct, that Section 10.4 extends to costs incurred in filing a petition to confirm or vacate, then the arbitrators could decide ex ante in their arbitral award that the party that prevails in its motion to confirm or vacate should bear its own costs. This is likely not what the parties intended, and would also undercut the Court's ability to award fees in an exercise of its inherent equitable powers. *New York City Dist. Council of Carpenters Pension Fund v. E. Millenium*

---

inappropriate reassessment of the evidentiary record. *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004).

*Const., Inc.*, No. 03 CIV. 5122(DAB), 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003) (courts can award fees "in the exercise of its inherent equitable powers . . . .").

Finally, the Respondent does not argue, nor does the Court find, any equitable bases for awarding fees. *See PremiereTrade Forex, LLC v. FXDirectDealer*, LLC, No. 12 CIV. 7006 PAC, 2013 WL 2111286, at *6 (S.D.N.Y. May 16, 2013) ("A court may exercise its inherent equitable powers to award fees . . . when opposing counsel has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citing *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local* 338, 118 F.3d 892, 898 (2d Cir.1997)) (quotation omitted). Therefore Respondent's motion for fees is denied.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate the arbitral award is **DENIED**; Respondent's cross-motion to confirm the award is **GRANTED**; and, Respondent's motion for attorneys' fees is **DENIED**.

**SO ORDERED.**

Dated: May 15, 2018
New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**